Cathy JONES, Individually and as Wife and Administrator of the Estate of Earl R. Jones, Deceased, Plaintiff,

v.

COUNTY OF DuPAGE, A Local Public Entity; Richard P. Doria, Individually and in his Official Capacity as Sheriff of DuPage County; Joseph Caulfield, Individually and in his Official Capacity as Deputy in Charge of Corrections for DuPage County Jail; Louis Cook, Individually and in his Official Capacity as Deputy Jailer of DuPage County; et al., Defendants.

No. 87 C 9841.

United States District Court, N.D. Illinois, E.D.

Dec. 7, 1988.

George N. Avgeris, Timothy Fisher, Hinsdale, Ill., for plaintiff.

James R. Schirott, Charles E. Hervas, James G. Sotos, Michael W. Condon, Schirott & Associates, Itasca, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff, on behalf of herself and her son, Earl Jones, has sued the County of DuPage ("DuPage"), the City of Elmhurst ("Elmhurst") and numerous county and city officials for allegedly causing Earl to commit suicide shortly after he was arrested and incarcerated on October 18, 1985. She brought the suit in state court, alleging federal and state law claims against all defendants. Defendants subsequently removed to this court, and have now moved to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## THE COMPLAINT

Plaintiff's complaint, though long in words, is extremely short in substance. After parsing out the repeated lists and descriptions of the parties, and the redundant accusations as to what the defendants did *not* do, the factual allegations are as follows.

Earl Jones was arrested by Elmhurst police officers ("the police officers") on October 18, 1985 for misdemeanor charges. At the time of the arrest, the police officers

recovered from Earl a quantity of cannabis sativa, a vial of Ativan tablets, a vial containing Valium tablets and an open bottle of whiskey. Earl was intoxicated.

The police officers then transported Earl to the DuPage County jail, where they released him into the custody of the DuPage County jail officials ("the jail officials"). These officials then placed Earl in an isolation cell. Some time later, in the early morning hours of October 19, 1985, Earl hanged himself from the bars of the cell by a bedsheet. By the time he was discovered and medical personnel were summoned, Earl was dead.

In Counts I and II, plaintiff claims that the police officers and the jail officials, respectively, negligently caused Earl's death through, *inter alia*, their failure to adequately discover that Earl was intoxicated and emotionally upset, failure to provide him with medical services as required by his condition, failure to supervise him while he was locked in solitary confinement, and failure to "provide [him] with bedding materials such as 'tear away' blankets and sheets which would have prevented [him] from inflicting harm on himself or committing suicide." Compl. ¶ 12.

In Count III, plaintiff first claims that the conduct of the city and county officials was a result of their improper training as well as the inadequate funding of the jail facility. She then alleges that the improper training and inadequate funding, combined with the negligence of the police officers and jail officials, violated Earl's federal constitutional rights.

## DISCUSSION

*The Federal Claims*

Plaintiff alleges that the DuPage and Elmhurst officials violated three constitutional provisions through their arrest, detention and treatment of Earl: the Fourth Amendment Reasonableness Clause; the Eighth Amendment Cruel and Unusual Punishment Clause; and the Fourteenth Amendment Due Process Clause. To determine which, if any, of these claims have merit requires a careful examination of current law governing the detention of individuals by the state. For while it is axiomatic that the Constitution places limits on how state officials may treat individuals in the state's custody, the source of these limits as well as their scope can differ markedly from case to case.

The Fourth Amendment governs the conduct of a government official taking an individual into custody—i.e., seizing him—and imposes rather stringent limits on what the official may do. When it can reasonably be accomplished, the officer must secure an arrest warrant. *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979). When he cannot, he must have probable cause before making the arrest. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). In either case, he may only use such force as is reasonably necessary to effectuate it. *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985); *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir.1987). And, if he makes the arrest without a warrant, he must bring the arrestee before a magistrate for a determination of probable cause within a short period of time. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed. 2d 54 (1975).

Once an arrestee is properly in custody, he becomes a pretrial detainee, and the Constitution provides him fewer protections. His First and Fourth Amendment rights are of a diminished scope, *see Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Hudson v. Palmer*, 468 U.S. 517, 555, 104 S.Ct. 3194, 3215, 82 L.Ed. 2d 393 (1984) (O'Connor, J., concurring), and his substantive due process rights are limited to protection against egregious government conduct. *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973) (Friendly, J.). To be sure, the procedural prong of the Due Process Clause does prohibit the state from "punishing" him, *Block v. Rutherford*, 468 U.S. 576, 583–85, 104 S.Ct. 3227, 3231–32, 82 L.Ed.2d 438 (intent to punish can be inferred if purported internal security measures are not reasonably related to legitimate government objective), since doing so would clearly amount to a depriva-

tion of liberty without due process—i.e., a criminal trial. But that limitation is a narrow one. "If a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to 'punishment.' " *Bell v. Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874.

If the pretrial detainee is convicted, the even more limited protections of the Eighth Amendment come into play. *Whitley v. Ambers*, 475 U.S. 312, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) ("The Cruel and Unusual Punishment Clause applies ... 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.") (*Quoting Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977)). Now the state may punish him, by depriving him of life, liberty or property, and may subject him to harsh treatment and conditions of confinement; "only the 'unnecessary and wanton infliction of pain' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. at 670, 97 S.Ct. at 1412 (*quoting Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)); *see also Whitley v. Ambers*, 475 U.S. 312, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (Eighth Amendment prohibits wanton infliction of pain by prison officials maintaining security); *Estelle v. Gamble*, 429 U.S. at 105, 97 S.Ct. at 291 (Eighth Amendment prohibits "deliberate indifference to a prisoner's serious illness or injury").

This outline provides a useful starting point for addressing plaintiff's constitutional claims. Thus, it makes clear immediately that plaintiff's Eighth Amendment claims cannot survive, since plaintiff had not been convicted of a crime at the time he committed suicide. It also indicates that whether Earl was an arrestee, or instead a pretrial detainee will have significant implications for his Fourth and Fourteenth Amendment claims.

Defendants' primary argument for dismissal of Count III overlooks this distinction. Because negligent deprivations are not deprivations within the scope of the Fourteenth Amendment Due Process Clause, *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Archie v. Racine*, 847 F.2d 1211 (7th Cir.1988) (en banc), and because plaintiff alleges only that defendants failed to exercise due care in their treatment of Earl, defendants maintain that plaintiff has failed to state a claim.

Plaintiff's first response to this argument ignores it. She insists that defendants, acting under color of state law, deprived Earl of his life and, therefore, violated the Due Process Clause. The problem with her argument, of course, is that the deprivation of life by a government official is not ipso facto a due process violation.

The government may lawfully kill a person after he has been convicted of a capital crime provided it does so in accordance with a valid death penalty statute. *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Government officials may kill a person intentionally without such a conviction where exigent circumstances require it. *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). And, as *Davidson* and *Daniels*, and the cases springing from them, have made clear, government officials may kill a person accidentally or negligently at any time without running afoul of the Due Process Clause. *See Davidson v. Cannon*, 106 S.Ct. at 671 ("[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."); *Archie v. Racine*, 847 F.2d at 1218–20; *Molton v. City of Cleveland*, 839 F.2d 240 (6th Cir. 1988); *McClary v. O'Hare*, 786 F.2d 83 (2d Cir.1986); *see also State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1147–48 (7th Cir.1983) (suicide of pretrial detainee resulting from "simple negligence" on part of prison officials does not amount to violation of Fourteenth Amendment Due Process Clause), *cert. denied*, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983). Thus, to the extent that plaintiff seeks to hold the defendants liable under the Due Process clause for negligently causing Earl's death,

she fails to state a claim for relief. *Compare Partridge v. Two Unknown Police Officers of Houston Police Department,* 791 F.2d 1182 (5th Cir.1986) ("To the extent the complaint ... alleges negligence on the part of the arresting officer, it fails to state a claim.... But to the extent that the claim rests on the detention center's deliberate and systematic lack of adequate care for detainees, it alleges the kind of arbitrariness and abuse of power that is preserved as a component of the due process clause in *Daniels.*").

That the negligent deprivation of life does not violate the due process clause does not, of course, immunize the defendants from liability under § 1983. If the defendants' negligent acts violated some other constitutional provision, and if this misconduct proximately caused plaintiff to commit suicide, then the defendants will be liable for his death. *Jones v. City of Chicago,* 856 F.2d at 993; *see also Moore v. Marketplace Restaurants, Inc.,* 754 F.2d 1336, 1359 (7th Cir.1985) (Posner, J., concurring in part and dissenting in part). Since, as noted above, the Eighth Amendment does not apply until an individual is convicted, plaintiff's hopes here lie in the Fourth Amendment.

■ Plaintiff pleads two distinct Fourth Amendment claims. She first alleges that the extended detention of Earl without a probable cause determination by a judicial officer violated Earl's rights as set forth in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). *Gerstein* held that when the police make a warrantless arrest, the Fourth Amendment requires them to bring the arrestee before a judicial officer within a reasonably brief period of time. The Seventh Circuit has made clear that a delay of even a couple of hours places the burden on the government to

explain the delay. *Moore v. Marketplace Restaurants, Inc.,* 754 F.2d 1336, 1350–51, 1351–52 (7th Cir.1985). Nothing on the face of the complaint indicates the reason here, so for now this claim must survive.

Plaintiff also alleges that the negligent, or grossly negligent, treatment of Earl following his arrest violated his Fourth Amendment rights. Recently, the Seventh Circuit held that the Fourth Amendment reasonableness standard, rather than the substantive due process "shocks the conscience" standard, should govern not only cases involving allegations that an arrest was illegal, but also cases in which an arrestee alleges that the police used excessive force in arresting him. *Lester v. City of Chicago,* 830 F.2d at 713 (overruling *Gumz v. Morrisette,* 772 F.2d 1395, 1400 (7th Cir.1985)).

Two areas of Fourth Amendment law pertaining to this case, however, remain unresolved after *Lester.* The *Lester* Court expressly declined to demarcate "the line between arrest and pretrial detention." *Lester v. City of Chicago,* 830 F.2d at 713 n. 7; *see also Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988) ("At some point after a person is arrested, the question whether his continued confinement or prosecution is unconstitutional passes over from the Fourth Amendment to the due process clause."). In addition, the Court did not decide whether Fourth Amendment standards should apply to all claims that government officials have mistreated an arrestee during the course of an arrest— i.e., even those not amounting to excessive force in arrest. *Lester v. City of Chicago,* 830 F.2d at 713 n. 7 ("[W]e express no view as to the viability of substantive due process other than in *excessive force* in arrest claims.") (emphasis added).[1]

1. In *Moyer v. Dunn County,* 691 F.Supp. 164 (W.D.Wisc.1988), the court quoted this sentence from *Lester* as follows: "The court did not express a 'view as to the viability of substantive due process other than in excessive force *in arrest* claims.'" *Id.* at 172 (quoting *Lester v. City of Chicago,* 830 F.2d at 713 n. 7). Yet, this reading of that sentence in *Lester* makes redundant the next sentence—"Likewise, we do not address the proper standard for analyzing claims of excessive force by state officers in other situations, such as pretrial detention." Instead, this court suggests that the Seventh Circuit was saying in the first sentence that it was not deciding whether Fourth Amendment, or instead Fourteenth Amendment analysis should apply to other claims of government misconduct—e.g., intimidation, or failure to secure needed medical assistance—during the course of an arrest.

Thus, to determine whether Fourth Amendment or Fourteenth Amendment standards should govern this case, this court must resolve two questions. First, was Earl an arrestee or was he a pretrial detainee when he committed suicide? Second, if he was an arrestee, does *Lester* govern this case despite the fact that the alleged misconduct differs from excessive force in arrest?

In *Lester,* the Court held that the Fourth Amendment applied—that is, the plaintiff was still an arrestee—because the Fourth Amendment "is specifically directed to methods of arrest and seizure of the person," *id.* at 710 (*quoting Bell v. Milwaukee,* 746 F.2d 1205, 1278 n. 87 (7th Cir. 1984)), and because, once a seizure occurs, it continues at least as long as the arrestee remains "in the company of the arresting officers." *Id.* at 713 n. 7 (*quoting Robins v. Harum,* 773 F.2d 1004, 1010 (9th Cir. 1985)). Since Earl was no longer in the company of the police officers when he committed suicide, the holding in *Lester* does not control this case. Nevertheless, it does inform the analysis here. If Earl was still subject to a "seizure", then he remained an arrestee within the scope of the Fourth Amendment guarantees.

Although defining the precise moment at which a seizure ends and detention begins will not always be an easy task, there is a line of authority in Fourth Amendment case law strongly suggesting that, in the case of warrantless arrests, a fixed rule can be established. As noted above, the Supreme Court held in *Gerstein* that when the police make a warrantless arrest the Fourth Amendment requires them to bring the arrestee before a judicial officer for a probable cause determination within a reasonable period of time. 420 U.S. at 125, 95 S.Ct. at 868. Semantically *Gerstein* can be read to mean either that the Fourth Amendment reasonableness test applies not only to "arrests" but also, in these cases, to "detentions", *Fisher v. Washington Metro Area Transit Authority,* 690

F.2d at 1140, or, alternatively, that the "arrest" does not become a "detention" until the judicial officer finds probable cause to hold.

■ One thing, however, is clear: The Fourth Amendment's prohibition against unreasonable "seizures" applies, at least with respect to the duration of the seizure, until the individual is taken before a judicial official, *see Gramenos v. Jewel Companies,* 797 F.2d 432, 437 (7th Cir.1986); *Bergren v. City of Milwaukee,* 811 F.2d 1139, 1143 (7th Cir.1987), and does so irrespective of whether the individual remains in the custody of the arresting officers throughout the time prior to his appearance. *Fisher v. Washington Metro Area Transit Authority,* 690 F.2d at 1141, n. 11. This court can see no reason for applying the Fourth Amendment differently in cases where the person challenges, not merely the duration of the seizure, but the conditions as well. *See Fisher v. Washington Metro Area Transit Authority,* 690 F.2d at 1141 n. 11 (conditions of confinement remain subject to Fourth Amendment strictures until the individual receives a judicial determination of probable cause), *discussed with approval, Moore v. Marketplace Restaurants, Inc.,* 754 F.2d 1336, 1350–51, 1351–52 (7th Cir.1985). *Compare Justice v. Dennis,* 834 F.2d 380 (4th Cir.1987) (affirming trial court's "shocks the conscience" instruction in case involving alleged excessive force following a magistrate's determination of probable cause).[2]

The Supreme Court's decision in *United States v. Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), supports this approach. In that case, the Court applied Fourth Amendment standards in analyzing the extended and "humiliating" detention of a person attempting to smuggle cocaine into this country. The defendant had been stopped by customs officials who suspected that she had swallowed the cocaine in balloons, and was held for twenty-seven hours until she moved her

**2.** The dissenting judge in *Justice v. Dennis* opined that Fourth Amendment reasonableness analysis should apply to excessive force claims predicated on post-appearance conduct by

government officials, particularly when the officials are the arresting officers. 834 F.2d at 387–88 (Phillips, J., dissenting).

bowels and the cocaine exited her body. To be sure, the Court held only that "the detention ... was not unreasonably long," *id.* 105 S.Ct. at 3312, but it is clear from the opinion that the court examined both the duration and the conditions of the detention in upholding the seizure. *Id.* ("both [the detention's] length and its discomfort resulted solely from the method by which [the defendant] chose to smuggle illicit drugs into this country"); *see id.* 105 S.Ct. at 3313 (Brennan, J., dissenting) (arguing that both the length and the conditions of the detention violated the Fourth Amendment). Thus, the case strongly suggests that, so long as the Fourth Amendment governs the duration of a person's detention, it governs the conditions of that detention as well.

Precedent aside, there are good reasons for holding government officials to the Fourth Amendment's reasonableness standard until a judicial determination of probable cause has been obtained. An individual arrested without a warrant is in a uniquely vulnerable position. Not only has he been arrested based solely on the probable cause determination of police officials, but, as far as he knows, only the police know his whereabouts. Whatever fear and distress he might feel on account of his having been arrested at all might remain magnified until he comes before a judicial officer.

■ Furthermore, the emotions of government officials are likely to be at their highest in the period following a warrantless arrest. Unlike an arrest pursuant to a warrant, the warrantless arrest places on the police officials the sole responsibility for the propriety of their conduct. *United States v. Ross*, 456 U.S. 798, 823 n. 32, 102 S.Ct. 2157, 2172 n. 32, 72 L.Ed.2d 572 (1982) ("[I]n choosing to search without a warrant on their own assessment of probable cause, police officers of course lose the protection that a warrant would provide to them in an action for damages brought by an individual claiming that the search was unconstitutional."). This added tension renders the arrested individual even more vulnerable to the overzealousness of officials seeking evidence to vindicate their action. Accordingly, this court finds that an individual arrested without a warrant remains an arrestee for the purposes of *Lester*'s Fourth Amendment analysis until he is brought before a judicial officer for a probable cause determination.

Turning to the second question raised above—that is, whether *Lester* applies to all claims challenging the treatment of arrestees or only to excessive force claims—this court believes that it applies to all such claims. Nothing in the *Lester* analysis suggests any basis for distinguishing excessive force claims from others challenging the constitutionality of a seizure.

On the contrary, the reasoning of *Lester* that the Fourth Amendment, rather than the Fourteenth, "is specifically directed to unreasonable seizures," 830 F.2d at 712, is applicable to all seizures, not just those allegedly undertaken with excessive force. And the Supreme Court case on which *Lester* relied, *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), concluded that the Fourth Amendment's reasonableness standard applies to the use of deadly force in arrest on the basis of precedent establishing that the Fourth Amendment *always* applies to "how an arrest is carried out." *Id.* 105 S.Ct. at 1699–1700 (citations omitted); *see Simpkins v. Sandwich Community Hospital*, 854 F.2d 215, 218–19 (7th Cir.1988) (holding that Fourth Amendment did not apply to claim that an interrogation resulting in a confession was conducted with excessive force, but suggesting that this was so only because the interrogating official had not "seized" the plaintiff at the time he questioned her); *but see Robinette v. Barnes*, 854 F.2d 909 (6th Cir.1988) (Fourth Amendment did not apply to § 1983 claim brought on behalf of an individual killed by a police dog while the deceased was committing a burglary because death resulting from the use of a police dog does not constitute "deadly force").[3]

---

**3.** In *Robinette,* the Sixth Circuit appears to have held that Fourth Amendment reasonableness analysis only applies to excessive force in arrest claims when the excessive force amounts to

To summarize, then, this court rules that an individual remains an arrestee until he is brought before a judicial officer for a probable cause determination, and that the Fourth Amendment Reasonableness Clause applies to all claims that an individual has been mistreated by government officials until such time.

In this case, plaintiff alleges that Earl was arrested without a warrant on the night of October 18, 1985, was detained without a probable cause hearing throughout the night and into the morning of October 19, and was subjected to conditions of confinement that, at the very least, represent an unreasonable disregard for his personal safety and security. These allegations state a Fourth Amendment claim against the jail officials and DuPage for the unreasonable treatment of Earl while he was in custody of the jail officials. To succeed on this claim, plaintiff will have to establish that, under the totality of the circumstances during the time Earl was in the custody of the jail officials, the jail officials acted unreasonably in failing to recognize the danger of, and prevent, the suicide.[4] *See Lester v. City of Chicago,* 830 F.2d at 713.

Plaintiff has not, however, stated Fourth Amendment claims against the police officers or Elmhurst. Nowhere does the complaint set forth any facts to support plaintiff's conclusory allegations that the police officers acted unreasonably in taking Earl to the DuPage jail and placing him in the custody of the jail officials. Although she does allege that they failed to provide him with adequate medical care, the gravamen of her claim is not that Earl needed immediate medical attention, but rather that he required adequate supervision. By placing Earl in the hands of the jail officials, the police officers satisfied this burden. Accordingly, the Fourth Amendment claims against the police officers and Elmhurst will be dismissed.

### The State Claims

Defendants argue, and plaintiff concedes, that the state law negligence claims in Counts I and II are defective as they now stand. Under Illinois law, prison officials are liable for an inmate suicide only when the inmate was incapable of exercising ordinary care for his own protection. *Dezort v. Village of Hinsdale,* 35 Ill. App.3d 703, 342 N.E.2d 468 (1976); *Lakatos v. Kendall County,* 84 L 22 (Circuit Court of Kendall County, October 28, 1987). Yet, the complaint specifically alleges that Earl was capable of exercising such care at the time he took his own life.

Defendant contends that this pleading defect requires dismissal with prejudice. It does not. Plaintiff has indicated that she wishes to amend her complaint to cure the deficiency; if she can do so within the constraints of Federal Rule 11, then she may reallege her negligence claim against any or all of the defendants.

Plaintiff should bear in mind, however, that, at least as it now stands, Count III, the federal claim, does not state a claim against the police officers or Elmhurst. If her allegations in Count III do not change, then her only argument for this court's jurisdiction over the state law claims against these defendants would be the pendent jurisdiction of the federal courts. Particularly in § 1983 suits, pendent party

---

deadly force. In the Seventh Circuit, that clearly is not the law. *Lester v. City of Chicago,* 830 F.2d at 711 (*"Garner's* Fourth Amendment analysis applies to all excessive force in arrest claims, not just claims that police used deadly force."); *see also Williams v. Boles,* 841 F.2d 181, 183 (7th Cir.1988) (excessive force in arrest claims do not require "severe injury").

**4.** The jail officials appear to argue in their reply brief that, even if plaintiff has stated a claim against them in their individual capacity, she has not done so for her official capacity claims —i.e., her claims against DuPage. Yet, these defendants did not predicate their motion to dismiss on plaintiff's failure to plead facts supporting municipal liability, so raising it in their reply brief is improper. Since the complaint sufficiently provides DuPage with notice of the claims against which it must defend, this court will not rule on the validity of these official capacity claims at the present time. Of course, if discovery fails to produce a genuine issue of material fact on these claims, then the defendants will be free to move for summary judgment at an appropriate time.

jurisdiction remains an extremely unsettled doctrine, so if plaintiff insists on keeping the Elmhurst defendants in this case, she is almost certain to find herself facing another extended briefing schedule that might well end in the dismissal of these defendants from the lawsuit. *See generally Valliere v. Kaplan*, 694 F.Supp. 517, 519–21 (N.D.Ill.1988) (Duff, J.).

## CONCLUSION

The motion to dismiss of the Elmhurst defendants is granted without prejudice. The motion to dismiss of the DuPage defendants is denied on Count III and granted without prejudice on Count I.