**Kenneth Ray HENSON, Plaintiff,**

v.

**Lawrence THEZAN, Anthony Villardita, John Fitzsimmons, John Gover, and Unknown Officers of the Chicago Police Department, Defendants.**

**No. 87 C 3418.**

United States District Court, N.D. Illinois, E.D.

July 26, 1989.

Kenneth Ray Henson, Menard, Ill., Lance Haddix, Chicago, Ill., for plaintiff.

William B. Mackin, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Kenneth Ray Henson has sued Chicago Police Officers Lawrence Thezan, Anthony Villardita, and John Fitzsimmons under 42 U.S.C. § 1983 for allegedly beating him over a period of time following his arrest for a home invasion, rape, attempted murder, and child molestation. On November 2, 1988, this court denied the defendants' motion for summary judgment, 698 F.Supp. 150, but the defendants have moved for reconsideration of that ruling in light of the Seventh Circuit's recent opinion in *Wilkins v. May*, 872 F.2d 190 (7th Cir. 1989). For the reasons set forth below, their motion will be denied.

## FACTUAL BACKGROUND

As in the original ruling, this court accepts as true the plaintiff's version of the events. Around midnight on December 18, 1984, Officers Thezan and Fitzsimmons appeared at the home of the plaintiff's uncle and there placed the plaintiff under arrest on suspicion of a home invasion, rape, child molestation and attempted murder that had occurred the previous evening. After handcuffing the plaintiff, Officer Thezan pushed the plaintiff down a flight of stairs, causing him to land on his face.

Once in the squad car, Officer Thezan began beating the plaintiff in the face, demanding that he talk about the events of the prior evening, but when Officer Fitzsimmons warned Officer Thezan against leaving marks, the latter shifted his attack to the plaintiff's body. At some point during the journey, Officer Thezan threatened to shoot the plaintiff's "black ass dead" if he did not speak. Still the plaintiff refused to talk.

Back at the station, the officers placed the plaintiff in an interrogation room where, over the course of the next few hours, all three defendants took turns intimidating and beating the plaintiff in an effort to make him confess. Ultimately, the plaintiff signed an inculpatory statement regarding his participation in the crimes of the previous evening. As a result of the beatings, the plaintiff lost the toenails on his feet, suffered injuries to his groin and back, and experienced severe emotional distress.

## PROCEDURAL BACKGROUND

Because ours is a society in which no man is above the law, and no man beneath it, the fact that the plaintiff was convicted and sentenced for a henious crime neither exonerates the officers for what they allegedly did to him, nor prevents the plaintiff from bringing his claims to court. On April 13, 1987, he did just that, alleging that the defendants had violated his rights under the Fourteenth Amendment Due Process Clause and the Eighth Amendment Cruel and Unusual Punishment Clause.

On July 13, 1988, the defendants moved for summary judgment. They first argued that *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir.1987), established that the plaintiffs' allegations all amounted to claims of excessive force in arrest, and that such claims fell within the Fourth Amendment Reasonableness Clause. On the basis of testimony that the defendants had not beaten the plaintiff, as well as pictures and

medical records showing that the plaintiff had suffered no lasting physical injuries, the defendants then urged that *Lester* entitled them to summary judgment because no reasonable jury could find that the defendants had acted unreasonably in arresting the plaintiff, or that the plaintiff had sustained meaningful damages during the arrest.

This court denied the motion. Agreeing that *Lester* provided the analytical framework for the plaintiff's claims, 698 F.Supp. at 151–52, the court first held that the plaintiff's testimony about the events surrounding his arrest easily created a jury question as to whether the defendants had used unreasonably excessive force against him. *Id.* at 152. The court then held that although a plaintiff must prove more than trivial injury to prevail on a Fourth Amendment claim, such injury need be neither physical nor permanent. *Id.* at 153.

## DISCUSSION

On April 17, 1989, the Seventh Circuit issued *Wilkins v. May*, 872 F.2d 190 (7th Cir.1989). In that case, the plaintiff alleged that, during an interrogation following his arrest, the defendants had pointed a gun at his head in an effort to extract a confession from him, and that this had caused him severe mental distress. The district court dismissed this claim. Employing the substantive due process analysis established by *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973) (Friendly, J.), for claims brought by pretrial detainees, the district court held that the plaintiff had failed to state a claim because "the conduct complained of by the plaintiff did not cause him severe injury, and was not so brutal or inhumane as to be shocking to the conscience." *Wilkins*, 872 F.2d at 192.

On appeal, the plaintiff urged that the Fourth Amendment reasonableness standard, rather than Fifth (or Fourteenth) Amendment due process analysis, governed his claim. *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), and *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir.1987), had established that the Fourth Amendment governs police conduct

in seizing a person. *Johnson v. Glick, supra*, had declared that the more lenient due process clause governs police conduct once a person becomes a pretrial detainee. *See also Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In determining the applicable constitutional provision, the Seventh Circuit in *Wilkins* addressed and answered two questions: What is a Fourth Amendment seizure? And when does it end?

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court had held that a seizure occurs whenever a police officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id.* at 19 n. 16, 88 S.Ct. at 1879 n. 16; *accord, Garner*, 471 U.S. at 7, 105 S.Ct. at 1699. Though *Terry* and *Garner* involved seizures of free persons, the dissent in *Justice v. Dennis*, 834 F.2d 380 (4th Cir. 1987) (en banc), *vacated*, —— U.S. ——, 109 S.Ct. 2461, 104 L.Ed.2d 982 (1989), reasoned that their definition of seizure applies as well when individuals already within police custody suffer further restraints on their liberty. Because "any application of physical force to a citizen which has the effect of disabling him physically to any extent is a 'restraint on his liberty,'" such a use of force constitutes a seizure subject to the Fourth Amendment reasonableness standard irrespective of whether the citizen is a free man, an arrestee or a pretrial detainee at the time. *Id.* at 388 (Phillipps, J., dissenting).

*Wilkins* acknowledged that, under this approach, the officers' conduct in pointing a gun at Wilkins's head constituted a new seizure governed by the Fourth Amendment's reasonableness standard. 872 F.2d at 192. The Court, however, took a different path. Reasoning that once the police initially have seized an individual it becomes incongruous to ask whether any further use of force against him is reasonable relative to the danger he poses, *id.* at 193, and that applying the Fourth Amendment standard to such a further use of force would "lead to an unwarranted expansion of constitutional law," 872 F.2d at 194, the

Court held that, once the police have completed their initial seizure of an individual, any further restraints on his liberty do not constitute seizures, but instead amount to deprivations of liberty within the province of the due process clause. *Id.* at 194.

The Court's rationale for its holding makes sense only after examining its answer to the second question—that is, when a seizure comes to an end. *Terry* held that an investigatory stop constitutes a seizure subject to Fourth Amendment protections. A traditional arrest, of course, is also a seizure within the Fourth Amendment. *See Lester,* 830 F.2d at 712. Yet, if the Fourth Amendment ceased to apply once the officers have completed a *Terry* stop (i.e., a first seizure), then in a case where a *Terry* stop escalated into an arrest, the Fourth Amendment would not govern the officers' conduct in effecting the arrest (i.e., the second seizure).

That is not what *Wilkins* had in mind. The Court was seeking to demarcate a line between seizure and detention, not one between investigatory stop and arrest. To do this, the Court defined the end of a seizure as the point when the individual "has been placed securely in custody." *Id.* at 193. Until that time, the initial seizure continues and the Fourth Amendment requires a balancing of the force used against the danger posed. *Id.* After that point, due process mandates only that the police refrain from behavior which shocks the conscience and which subjects the detainee to "severe bodily or mental harm." *Id.* at 195.[1] Since the officers in *Wilkins* had the plaintiff securely in custody at the time of the interrogation, the Court held that the due process clause applied. The Court then reversed the district court's dismissal of the plaintiff's claim, holding that determinations as to whether the defendants' alleged conduct shocked the conscience, and whether the plaintiff had suffered severe injury, re-

quired at least the submission of evidentiary materials. *Id.* at 192, 195.

Shortly after *Wilkins* issued, the defendants moved for reconsideration of this court's denial of their original summary judgment motion. They first argued that, because all of their alleged misconduct occurred after the time they had the plaintiff handcuffed and securely in custody, the *Johnson v. Glick* and *Wilkins* due process tests apply here. They then insisted that, under these tests, the plaintiff has failed to establish a jury question as to whether he suffered the requisite "severe bodily or mental harm." *Wilkins,* 872 F.2d at 195.

The defendants, however, were not the only ones able to cite new case law. Less than two weeks after they filed their motion, the Supreme Court decided *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In that case, the plaintiff brought a Fourth Amendment claim against police officers who, after becoming suspicious when the plaintiff rapidly entered and exited a convenience store, allegedly handcuffed, tormented and beat him while another officer investigated. The district court, without deciding what constitutional provision applied, employed the *Johnson v. Glick* due process analysis, and entered a directed verdict against the plaintiff on the grounds that he had not established severe injury or malicious and sadistic police conduct. The Fourth Circuit Court of Appeals, also without identifying the specific constitutional provision at issue, affirmed on the same grounds. 827 F.2d 945 (4th Cir.1987).

The Supreme Court reversed. After noting that the first step in § 1983 litigation requires a determination as to the applicable constitutional provision, the Court held "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop or other 'seizure' of a free citizen

---

1. *Williams v. Boles,* 841 F.2d 181 (7th Cir.1988), noted that, in light of *Whitley v. Ambers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), severe bodily injury is no longer a requirement in an Eighth Amendment claim, and thus no longer a requirement in a substantive due process claim. 841 F.2d at 183. This does not

necessarily conflict with the statement in *Wilkins* that severe mental injury is required in a due process claim, because *Wilkins* pointed out that it was using severe mental injury as a proxy for "not so severe" bodily harm. 872 F.2d at 195.

should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." 109 S.Ct. at 1871 (emphasis in original). The Court, however, declined to decide "whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins." 109 S.Ct. at 1871 n. 10. The Court also offered no suggestion as to when a seizure comes to an end.

The plaintiff here argues that *Graham* undermines the defendants' efforts to apply *Wilkins* to the entire gamut of his claims.[2] Specifically, the plaintiff contends that although no arrest took place in *Graham*, the fact that the *Graham* plaintiff was handcuffed throughout most of the incident demonstrates that a seizure continues beyond the point at which the police have the suspect in custody. In an effort to avoid direct confrontation with the *Wilkins* holding, the plaintiff further suggests that the Fourth Amendment governs until the suspect arrives at the station for processing. If so, then the plaintiff's claim against Officer Thezan survives regardless of whether his allegations suffice under the *Johnson v. Glick* and *Wilkins* due process tests.

The defendants, in turn, contend that *Graham* is inapposite. According to them, the fact that *Graham* involved an investigatory stop which never matured into an arrest means that its holding does nothing to disturb the *Wilkins* ruling that Fourth Amendment protections cease upon completion of an arrest. As it turns out, not only are the defendants wrong, but the plaintiff is more correct than he realizes.

It is true that *Graham* explicitly declined to opine on the *Justice* dissent's view that the Fourth Amendment continues to protect an individual from additional seizures —i.e., restraints on his liberty—even after his initial seizure has ended. Though the Supreme Court subsequently vacated *Justice*, which had held that the *Johnson v. Glick* due process test applied to the use of force against an arrestee after he appeared before a magistrate, *see* 834 F.2d at 381, the Supreme Court might well have been reacting to the *Justice* majority's statement that this test applies regardless of whether the plaintiff's claim arises under the Fourth Amendment or the Fourteenth Amendment, *see id.* at 382. Neither *Graham* nor the vacation of *Justice* undermines the Seventh Circuit's holding that, once an initial seizure has terminated, any further use of force falls within the purview of the due process clause.

*Graham*, however, does call into question *Wilkins*'s analysis regarding the termination of a first seizure. In *Wilkins*, it will be remembered, Judge Posner drew a line between seizure and detention by holding that a seizure ends when the police have the individual "securely in custody." Yet, the fact that the officers in *Graham* had the plaintiff securely in their custody well before the incident ended, *see* 109 S.Ct. at 1868, did not prevent the Supreme Court from applying the Fourth Amendment reasonableness standard to the entire incident.[3]

**2.** The court commends the attorneys on both sides for their performance with respect to the instant motion. Not only did they discover *Wilkins* and *Graham* within days of issuance, but they then incorporated the cases into well-reasoned and well-written briefs on behalf of their clients.

**3.** Because a seizure occurs whenever government officials "intentional[ly] acqui[re] ... physical control" over an individual, *Brower v. County of Inyo,* — U.S. —, 109 S.Ct. 1378, 1380, 103 L.Ed.2d 628 (1989), whereas custody requires "'formal arrest or restraint of freedom of movement' of the degree associated with a formal arrest," *California v. Beheler,* 463 U.S.

1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)), not every seizure equates with custody. Some investigatory stops are so lacking in coercive and threatening characteristics that they do not amount to taking the individual into custody. *See Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *accord Pennsylvania v. Bruder,* — U.S. —, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988). At the same time, some seizures, though not technical arrests, do constitute custody. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). The facts in *Graham,* involving handcuffing, physical restraint and bodily harm, clearly fall

In other words, *Graham* and *Wilkins* agree that the Fourth Amendment applies until the initial seizure comes to an end, but *Graham* seems to hold, contrary to *Wilkins,* that when the police beat an individual senseless after gaining control over (initially seizing) him, the Fourth Amendment still can provide the appropriate framework for assessing the lawfulness of their conduct. *Graham* thus appears to undercut *Wilkins*'s view that a seizure ends at the moment the police gain custody and control over the suspect.

If the seizure does not end then, then when does it end? Without its "custody" rationale, *Wilkins* leaves us with a holding that a seizure is over by the time custodial interrogation begins, but no principled basis for reaching this result. In *Jones v. County of DuPage,* 700 F.Supp. 965 (N.D. Ill.1988), decided after *Lester* but before *Wilkins* and *Graham,* this court ruled that, at least in the case of a warrantless arrest, "seizure ends and detention begins" when the police bring the arrestee before a judicial officer for a probable cause determination. *Id.* at 970. Analogies from other areas of Fourth Amendment law suggested this division, *see Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and practical concerns supported imposing a higher standard of care on officers until such time as they receive judicial approval for their seizures. *See* 700 F.Supp. at 970–71. Without citing *Jones, Wilkins* rejected the analysis. Its reasons for doing so, however, prove significant.

*Gerstein* had held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." 420 U.S. at 114, 95 S.Ct. at 863. *Jones* found *Gerstein* instructive in deter-

mining the time at which a seizure comes to an end, reasoning that *Gerstein*'s ruling that a state may not subject a person to pretrial detention without a judicial determination of probable cause supports the view that a seizure does not become a detention until such a determination is obtained. 700 F.Supp. at 970. *Wilkins* acknowledged an analogy between *Gerstein* and the question of when a seizure ends in an excessive force case, 872 F.2d at 193, but pointed out that because *Gerstein* involved an interpretation of the Fourth Amendment's requirement of probable cause, rather than its Reasonableness Clause, it did not necessarily control in the excessive force context. *Id.*

*Jones,* too, recognized that *Gerstein* served only as an analogy, not a precedent.[4] 700 F.Supp. at 970. Turning to practical considerations, *Jones* then determined that an individual's enhanced vulnerability, and an officer's higher emotional state, prior to the individual's appearance before a magistrate favored applying the stronger protections of the Fourth Amendment until such time. *Id.* at 971. As noted earlier, *Wilkins* viewed the practical considerations very differently. According to *Wilkins,* the fact that even minimal force against a person once he is in custody could be called unreasonable renders the Fourth Amendment reasonableness standard too severe after this point. 872 F.2d at 193–94. The Court thus rejected the *Gerstein* analogy.

*Graham* made no mention of *Gerstein,* but its willingness to apply the Fourth Amendment standard to the officers' use of force after they had the plaintiff securely in custody, indeed its specific rejection of the notion that such a standard would turn

---

into the latter category. *See United States v. Glenna,* 878 F.2d 967, 970–972 (7th Cir.1989).

**4.** *Jones* did state at one point that *Gerstein* implicated the Fourth Amendment's Reasonableness Clause as well as its probable cause requirement. 700 F.Supp. at 970. This statement came not from a misreading of *Gerstein* (as *Wilkins* implies), but rather from the Seventh Circuit's holding in *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336 (7th Cir.1985), that whereas

the probable cause requirement underlies *Gerstein*'s mandate that the police obtain judicial approval for an extended detention, the Reasonableness Clause provides the standard for assessing the permissible duration of a given preappearance seizure. *Id.* at 1351. Still, because the Reasonableness Clause in this context governs the duration of a seizure, rather than its conditions, *Jones* acknowledged that *Gerstein* provided only an analogy, not a controlling precedent. 700 F.Supp. at 970.

**1336**

every "push and shove" into a constitutional violation (109 S.Ct. at 1872), weakens *Wilkins*'s criticism of the *Jones* approach. In light of this, *Wilkins* does not stand as an obstacle to employing *Jones*'s line of demarcation between seizure and detention, and hence between Fourth Amendment and Fourteenth Amendment scrutiny. *Cf. LeVick v. Skaggs Companies, Inc.,* 701 F.2d 777, 778 (9th Cir.1983). Unless the Seventh Circuit rules otherwise, this court will adhere to that ruling. Since the plaintiff in this case had not yet appeared before a judicial officer when he suffered the alleged beatings, the Fourth Amendment continues to govern his claims against all of the defendants. The defendants' motion to reconsider therefore must be denied.[5]

### CONCLUSION

The defendants' motion to reconsider is denied.

---

**5.** It is worth nothing that, even had this court agreed with the defendants that Fourteenth Amendment due process governs this case, the court still would have denied the defendants' motion. *Wilkins* says that police conduct which "shock[s] the conscience" and which gives rise to "severe mental suffering" violates a detainee's due process rights. 872 F.2d at 195. The plaintiff's testimony, if believed, would permit the jury to find such a violation here.