**Luther WILKINS, Jr.,
Plaintiff–Appellant,**

v.

**James A. MAY, et al.,
Defendants–Appellees.**

No. 85–2194.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 9, 1989.

Decided April 7, 1989.

As Corrected April 14, 1989.
Rehearing and Rehearing En Banc
Denied May 30, 1989.

Steven J. Durham, Law Student, Northwestern University Legal Clinic, Chicago, Ill., for plaintiff-appellant.

Elizabeth M. Landes, Michael J. Marorvich, Asst. U.S. Attys., Chicago, Ill., for defendants-appellees.

Before POSNER, COFFEY and KANNE, Circuit Judges.

POSNER, Circuit Judge.

Luther Wilkins, Jr., was arrested in South Holland, Illinois in 1979 on suspicion of bank robbery. He was taken to the local police station and placed in a cell. Later that day he was taken to an interrogation room. There, while seated and handcuffed, he was questioned by two FBI agents, May and McDaniel. Wilkins claims that May held a pistol two or three inches from Wilkins's head, pointed at his temple,

and by doing so inflicted severe mental distress on him. He was prosecuted in federal district court for bank robbery, was convicted, and was sentenced to fifteen years' imprisonment. We affirmed. *United States v. Wilkins*, 659 F.2d 769 (7th Cir.1981).

Before Wilkins's trial the district judge had suppressed one of the statements that Wilkins had made during the interrogation. Apparently the judge believed that May had indeed pointed a gun at Wilkins while questioning him. After his conviction, Wilkins brought the present suit, which seeks damages from May and McDaniel on the ground that by extracting his confession at gunpoint they violated his constitutional rights. To this claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), Wilkins joined a damages claim under 42 U.S.C. § 1983 against Illinois police officers Kech and Zielenga, charging that they had conspired to convict him of a crime he had not committed by giving perjured testimony at his trial. For good measure Wilkins joined the United States as a defendant under the Federal Tort Claims Act, see 28 U.S.C. § 2680(h), seeking punitive damages for alleged perjury by May and McDaniel at the suppression hearing.

The district judge dismissed the claims against May and Kech because Wilkins had never served them with the complaint, and the claim against Zielenga because a witness has absolute immunity from damages liability for the consequences of his testimony. The judge dismissed the Federal Tort Claims Act claim on the ground that the Act does not authorize punitive damages, and refused to allow Wilkins to amend the complaint to ask for compensatory damages under the Act, noting that neither perjury nor conspiracy to commit perjury is a tort under Illinois law (see *John Allan Co. v. Brandow*, 59 Ill.App.2d 328, 207 N.E.2d 339 (1965)), which the parties agree is the law applicable in determining the liability of the United States to Wilkins under the Federal Tort Claims Act. See 28 U.S.C. § 2674. That left McDaniel. The judge dismissed the claim against him for failure to allege a constitutional deprivation: "the conduct complained of by the plaintiff did not cause him severe injury, and was not so brutal or inhumane as to be shocking to the conscience."

 That is the only questionable ruling. Wilkins's failure to serve May and Kech was inexcusable even under the liberal standard of *Del Raine v. Carlson*, 826 F.2d 698, 704–05 (7th Cir.1987). Witnesses do have absolute immunity, and Wilkins's attempt to circumvent it by charging them with conspiracy is facile and must fail. The claim under the Federal Tort Claims Act was properly dismissed, and the proposed amendment properly denied, for the reasons given by the district court. But we disagree that the complaint so plainly fails to state a claim against McDaniel that it could be dismissed before any affidavits or other evidentiary materials had been submitted. We are fortified in this conclusion by the fact that, shortly before argument in this court, the U.S. Attorney (representing McDaniel) confessed error and recommended that we remand the case to the district court.

"Whenever an officer restrains the freedom of a person to walk away, he has seized that person" within the meaning of the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). See also *Brower v. County of Inyo*, —— U.S. ——, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Wilkins was under restraint in the interrogation room. If this was a "seizure," then the only question is whether the manner of the restraint, including as we must assume it did the pointing of a gun at his head even though he was seated, handcuffed, and, so far as appears, as harmless as a mouse, made the seizure unreasonable and thereby violated the Fourth Amendment.

 The problem with this argument is that Wilkins had already been seized. He was seized when he was arrested. A natural although not inevitable interpretation of the word "seizure" would limit it to the initial act of seizing, with the result that subsequent events would be deemed to have occurred after rather than during the

seizure. Now once an arrested person is charged but before he is convicted, the question whether the fact, manner, or duration of his continued confinement is unconstitutional passes over from the Fourth Amendment to the due process clause. See *Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir.1973) (Friendly, J.); cf. *Justice v. Dennis*, 834 F.2d 380, 382 (4th Cir.1987) (en banc). And after conviction it becomes an Eighth Amendment issue. See, e.g., *Williams v. Boles*, 841 F.2d 181, 183 (7th Cir.1988). But what about the period between arrest and charge? To avoid a gap in constitutional protection, the Ninth Circuit in *Robins v. Harum*, 773 F.2d 1004, 1009–10 (9th Cir.1985), endorsed the concept of a continuing seizure. See also *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir.1988); *Negron Rivera v. Diaz*, 679 F.Supp. 161, 164 (D. Puerto Rico 1988). A panel of this court expressed agreement with that concept in a dictum in *Lester v. City of Chicago*, 830 F.2d 706, 713 n. 7 (7th Cir.1987), but another panel later expressed skepticism, also in dictum. See *Williams v. Boles, supra*, 841 F.2d at 183. The Fourth Circuit appears to have rejected it. See *Justice v. Dennis, supra*, 834 F.2d at 387–88. If the "continuing seizure" idea is correct, then governmental misconduct between arrest and charge is controlled by the standard of reasonableness in the Fourth Amendment.

■ It would be strange if the police were forbidden to use excessive force in making an arrest but free to beat the arrested person senseless as soon as the arrest was complete—yet after he was convicted and imprisoned were again forbidden, this time by the Eighth Amendment, to use excessive force. The concept of a continuing seizure is one way of filling this odd and unattractive gap in the Constitution. Moreover, we know from *Tennessee v. Garner* that to kill a fleeing suspect is a seizure within the meaning of the Fourth Amendment; it is simply a particularly dramatic deprivation of personal liberty, one of the interests protected by the amendment. If, having arrested and therefore seized a suspect, the police shoot him in order to make him more tractable, it can be argued that they have seized him anew— they have deprived him of additional dimensions of liberty. The analogy is to those incremental deprivations of liberty that are brought about by closer confinement of an imprisoned person (for example, in disciplinary segregation); they are deprivations of liberty actionable under the due process clause. *Wolff v. McDonnell*, 418 U.S. 539, 556–57, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974).

*Garner* is not controlling, though. It is a first-seizure case. And the incremental-imprisonment analogy is just that—an analogy. Analogies are everywhere; the trick is to pick the apt analogy. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), and *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), cases which hold that the Fourth Amendment places limits on the length of time an arrested person may be held before being brought before a magistrate, are not controlling either. They are interpretations of the Fourth Amendment's requirement of probable cause; they do not hold or imply that every moment of detention is a fresh seizure.

We are more impressed by two practical objections to the use of the Fourth Amendment to determine the limits of permissible post-arrest pre-charge conduct. The first is that the considerations that have been used to give meaning to the key substantive term in the amendment—"unreasonable"—are largely inapplicable once the arrest has taken place and the arrested person has been placed securely in custody. The usual issue in a Fourth Amendment arrest case is probable cause; in an excessive-force case such as *Garner*, it is whether the force used to seize the suspect was excessive in relation to the danger he posed (whether to the community or to the arresting officers) if left at large. For representative Fourth Amendment excessive-force cases see *Williams v. Boles, supra: Hinojosa v. City of Terrell*, 834 F.2d 1223 (5th Cir.1988); *United States v. Bigham*, 812 F.2d 943, 948 (5th Cir.1987); *Jamieson by Jamieson v. Shaw*, 772 F.2d 1205, 1209–10 (5th Cir.1985). These issues are not

present when a suspect already in custody is being questioned.

■ It is pertinent to note, moreover, that the action of a police officer in pointing a gun at a person is not, in and of itself, actionable under the cases we have just cited. Where the officer merely points a gun at a suspect in the course of arresting him, the suspect would have no basis for claiming that he had been seized with excessive force in violation of the Constitution. See, e.g., *Hinojosa v. City of Terrell, supra.* In the Fifth Circuit, physical injury must be shown in order to state a claim under the Fourth Amendment for excessive force when the force is used in the course of an otherwise proper arrest, but this showing is not required in situations not involving an arrest. See the discussion of this distinction in *United States v. Bigham, supra,* 812 F.2d at 948–49. The difference is practical. The court wants to head off a situation where every lawful arrest would precipitate a civil rights suit over the amount of force used to effect the arrest; the requirement of physical injury serves as a filter. The question whether an interrogation was too coercive raises different issues, which the text, history, and judicial interpretations of the Fourth Amendment do not illuminate. It is significant that the Fifth Circuit cases that involve excessive force other than in the course of making an arrest sound in due process rather than search and seizure. See *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir.1981); *Ware v. Reed,* 709 F.2d 345, 350–52 (5th Cir.1983); *Lynch v. Cannatella,* 810 F.2d 1363, 1375–76 (5th Cir.1987).

■ The second objection to the Fourth Amendment route is that it could lead to an unwarranted expansion of constitutional law. Suppose that all that May had done in the interrogation of Wilkins, besides ask questions, was stick his tongue out at Wilkins. This would be unreasonable; would it therefore make the "continuing seizure" of Wilkins violative of the Fourth Amendment? Surely not. But *why* not? There are no obvious limiting principles within the amendment itself. The problem is that the concept of continuing seizure attenu-

ates the element that makes police conduct in the arrest situation problematic: the police are taking away a person's liberty. Custodial interrogation does not curtail a person's freedom of action; it presupposes that he has already lost that freedom—for by definition he already is in custody. We reject the concept of continuing seizure.

There are, however, other possible routes to a conclusion that brutal police conduct in a custodial interrogation states a constitutional claim. First, the Fifth Amendment forbids compulsory self-incrimination. A number of cases hold that questioning a suspect at gunpoint violates this prohibition and is actionable under section 1983 (or, we may assume, *Bivens*), even if no confession results (and here a confession *did* result, and was suppressed). See, e.g., *Kerr v. City of Chicago,* 424 F.2d 1134 (7th Cir.1970); *Bradt v. Smith,* 634 F.2d 796, 800 (5th Cir.1981). This result is odd, even when the suspect confesses. The Fifth Amendment does not forbid the forcible extraction of information but only the use of information so extracted as evidence in a criminal case—otherwise, immunity statutes would be unconstitutional. But as Wilkins makes no claim under the self-incrimination clause, we need not try to resolve the issue.

■ Second, if ever there were a strong case for "substantive due process," it would be a case in which a person who had been arrested but not charged or convicted was brutalized while in custody. If the wanton or malicious infliction of severe pain or suffering upon a person being arrested violates the Fourth Amendment—as no one doubts—and if the wanton or malicious infliction of severe pain or suffering upon a prison inmate violates the Eighth Amendment—as no one doubts—it would be surprising if the wanton or malicious infliction of severe pain or suffering upon a person confined following his arrest but not yet charged or convicted were thought consistent with due process. The considerable authority that it is not (authority that includes Judge Friendly's opinion in *Johnson v. Glick, supra*) is marshaled effectively in *Kidd v. O'Neil,* 774 F.2d 1252,

1258–61 (4th Cir.1985), and although *Kidd* was overruled in *Justice v. Dennis, supra,* 834 F.2d at 383, this was for reasons unrelated to the present case. Certainly nothing in *Justice* impugns the review of authorities in *Kidd;* and see the Fifth Circuit cases cited earlier.

The argument for the approach taken in these cases is the sheer anomaly of excluding (other than by expansive interpretation of the Fourth Amendment through the concept of "continuing seizure") persons between arrest and conviction—not to mention the entire law-abiding community!—from constitutional protection against police brutality. The argument against is that maybe the Constitution is not a seamless web, and contains gaps that courts are not authorized to fill either by stretching the Fourth Amendment or by invoking the nebulous and historically much-abused concept of substantive due process. *Lester v. City of Chicago, supra,* 830 F.2d at 713 n. 7, left open the question whether substantive due process remains a possible ground of liability in cases of police brutality not governed by the Fourth or Eighth Amendments. The present case, however, can be decided without resolving the jurisprudential debate.

■ The due process clause of the Fifth and Fourteenth Amendments forbids the government to deprive persons of life, liberty, or property, without due process of law. "Liberty" has been generously interpreted, to encompass not just freedom of physical action but also such intangibles as familial association and liberty of conscience. See our recent discussion in *Mayo v. Lane,* 867 F.2d 374, 375 (7th Cir.1989). It has long been interpreted to include freedom from severe, and sometimes not so severe (see *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)), bodily harm (see, e.g., *Ware v. Reed, supra,* 709 F.2d at 351), to which severe mental distress can reasonably be compared. It is for the trier of fact to decide whether a particular incident involving interrogation at gunpoint is so terrifying in the circumstances as to constitute a deprivation of liberty within the meaning of the due process clause. When the deprivation occurs in the course of a police interrogation—a stage in the criminal justice process—it is fairly described as a denial of due process, with no need to add the oxymoronic "substantive." Interrogation so coercive is a form of criminal procedure incompatible with the traditional liberties of the subject. *Chambers v. Florida,* 309 U.S. 227, 237, 60 S.Ct. 472, 477, 84 L.Ed. 716 (1940), and *Brown v. Mississippi,* 297 U.S. 278, 285–86, 56 S.Ct. 461, 464–65, 80 L.Ed. 682 (1936), instance the rack as a method of interrogation forbidden by the due process clause. See also *Williams v. United States,* 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951). Interrogation at gunpoint is a comparable example—depending of course on the circumstances—even though it involves no touching. The applicability of the due process clause to police brutality occurring after the suspect is formally charged has rarely been questioned, and whether he has been charged, or merely arrested, seems to us a detail of no constitutional significance.

■ This is not to suggest that the federal courts should or will undertake to monitor the details of police interrogations, and to award damages whenever the police cross the line that separates coercive from noncoercive interrogation. The relevant liberty is not freedom from unlawful interrogations but freedom from severe bodily or mental harm inflicted in the course of an interrogation. We do not undertake to specify a particular threshold, a task that may well exceed our powers of articulation. But it is a high threshold, and to cross it Wilkins and plaintiffs like him must show misconduct that a reasonable person would find so beyond the norm of proper police procedure as to shock the conscience, and that is calculated to induce not merely momentary fear or anxiety, but severe mental suffering, in the plaintiff. Whether the threshold was crossed here is an issue to be explored on remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.