Paul HICKOMBOTTOM, Plaintiff,

v.

Robert McGUIRE, Thomas Tansey, James Kierse, William Murphy and James O'Connell, Defendants.

No. 89 C 1452.

United States District Court, N.D. Illinois, E.D.

May 31, 1991.

Paul Hickombottom, pro se.

Richard Grossman, Dannen, Crane, Heyman & Simon, Chicago, Ill., for plaintiff.

Diane Pezanoski, John F. McGuire, City of Chicago Dept. of Law, Kelly R. Welsh, Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Paul Hickombottom is currently serving a forty-year prison term at Danville Correctional Center in Danville, Illinois, for the robbery and murder of Jose Moreno. He has filed a § 1983 action against the police officers who arrested him for those crimes. The defendants have moved for summary judgment, and provided the court with a statement of uncontested facts in support of that motion, pursuant to Local Rule 12(m). Although Mr. Hickombottom initially failed to respond to the defendants 12(m) statement, he eventually did so at this court's prompting, admitting nearly all the facts offered by the defendants. In fact, Mr. Hickombottom has failed to demonstrate to this court that any material facts are in dispute which would require resolution by a trier of fact. Because the facts propounded by the defendants and admitted by the plaintiff entitle the defendants to judgment as a matter of law, this court grants the defendants' motion for summary judgment.

### Background [1]

On February 28, 1986, Jose Moreno was shot in the chest and died. That evening, detectives Robert McGuire and Thomas Tansey were assigned to investigate Mr. Moreno's death. At the scene of the murder, the two detectives met with the remaining three defendants, William Murphy, James O'Connell and James Kierse. The five of them canvassed the neighborhood, and learned that Victor Harris had been standing over Mr. Moreno's body. Accordingly, they went to Mr. Harris' apartment, arrested him, and brought him to the Area

---

1. The court's synopsis of the relevant facts is, unless otherwise noted, drawn from those facts which none of the parties disputes.

police station. At the station, Mr. Harris gave Detective McGuire the following information: Paul Hickombottom and a Tony Chavez paid Mr. Harris for the use of his apartment in order to sell drugs; Mr. Moreno supplied the drugs, and had come to Harris' apartment the evening of his murder, bleeding, and claiming that someone had tried to rob him; Hickombottom told Harris that Oliver Weekly had attempted to rob Moreno and that he and Harris were going to "stick up" Moreno; they obtained a gun, gave it to Weekly, arranged the time and place of the robbery; and then lured Moreno into their trap, where Weekly shot and killed him. Harris, Hickombottom and Weekly then split Moreno's money.

Also at the station were members of Mr. Moreno's family, who asked Detective McGuire about Moreno's car, which was not found at the scene. McGuire questioned Harris, who stated that Hickombottom had taken the car and left it in front of his apartment building. Harris also told McGuire that the murder weapon was in Hickombottom's apartment, in the nightstand underneath the television in the first bedroom on the left. Harris made all these statements to the police before Hickombottom's arrest. Furthermore, Hickombottom has agreed that Harris' version of events is substantially correct.

After obtaining Harris' statement, all of the defendants went to Hickombottom's apartment building. They found a car belonging to Moreno's brother parked there and placed it under surveillance. Within five minutes after the defendants arrived at the scene, Hickombottom walked out of the building with his girlfriend, Renee Williams, and another person, Arthur Wyatt. The three of them entered the Moreno car, and started it. At that point, the defendants stopped the car and ordered the group out. Hickombottom gave the detectives a false name and told them the car belonged to Wyatt. Wyatt denied that the car belonged to him, and told the defendants Hickombottom's true name. The de-fendants arrested Hickombottom, by then it was approximately 3:00 a.m. on the morning of March 1.

After arresting Hickombottom, detectives McGuire and Tansey knocked on his apartment door. Although no one answered, they heard children crying inside. Ms. Williams had already told them that her and Hickombottom's children were in the apartment, and that she shared the apartment with Hickombottom.[2] After failing to gain access to the apartment, the detectives returned to the street, where Hickombottom and Williams remained, and informed Williams that her children were crying and that there was a gun in the apartment. She returned to the apartment with the detectives and let them inside to get the gun.

McGuire and Tansey found the gun exactly where Harris told them it would be, and left the apartment. They brought Hickombottom to Area 1 headquarters, arriving at approximately 3:30 a.m. Murphy, Kierse and O'Connell remained with Hickombottom at the station for a minute or two, then left. Hickombottom did not see them again.

Although Hickombottom initially denied his involvement in the murder, by 1:20 p.m. the following afternoon he gave a court-reported statement to an assistant state's attorney. He does not now deny the statement's accuracy. During the course of the statement, he admitted that he shared his apartment with his girlfriend, Ms. Williams.

Tansey and McGuire last saw Hickombottom shortly after he gave his statement, at 1:20 p.m. Hickombottom "was" turned over (neither of the parties have informed the court by *whom*, but it apparently wasn't any of the defendants) to the police lockup within six or seven hours after giving his statement—eighteen hours after his arrest. The Chicago Police Department turned him over to Cook County Jail offi-

---

2. Hickombottom denies that Ms. Williams had any legal interest in the apartment. Whether she had actual or only apparent authority over the apartment, however, is irrelevant, as is dis-cussed below, and Hickombottom does not deny that Ms. Williams *told* the detectives that the apartment was hers.

cials on the morning of March 2, 1986, within thirty-three hours of his arrest.

Defendants arrested Hickombottom without the benefit of a warrant. The County issued an arrest warrant against him on March 2, however, because he had violated his parole. All court records date Hickombottom's first court appearance on this matter as March 2, 1986.[3]

Hickombottom moved to suppress his statement in a hearing before the Circuit Court of Cook County, arguing that it was coerced because, among other things, he was denied food and water, he was not allowed to sleep and he was subjected to threats and misrepresentations. During the hearing, however, he admitted that he was given food and water once during his detention. The court rejected all his claims and denied the motion to suppress.

A jury found Hickombottom guilty of felony murder and armed robbery. The court sentenced him to forty years in prison, and Hickombottom is presently serving that sentence at Danville Correctional Center in Danville, Illinois.

### Discussion

Hickombottom's amended complaint, the one presently pending before the court, alleges that the defendants arrested him without probable cause; that they failed to promptly bring him before a neutral magistrate for a probable cause determination; that they violated his right to due process by denying him food and water for an unreasonable length of time; and finally, that they violated his right against self incrimination by coercing his confession.[4]

---

**3.** Hickombottom admitted that the records indicate a court appearance on March 2, but states that he does not concede the accuracy of the documents. Because he has offered nothing to demonstrate that the documents are not accurate, his refusal to "concede" is meaningless.

**4.** The parties both argue the question whether the search of Hickombottom's person and apartment were lawful, and Hickombottom argues that he was the victim of excessive force. The court discussed the first claim in *Hickombottom v. City of Chicago,* 739 F.Supp. 1173, 1178–79 (N.D.Ill.1990), stating that it was improper for Hickombottom to use unlawful search claims to indirectly attack the legality of his confinement.

The court already dealt with Hickombottom's first claim, in *Hickombottom v. City of Chicago,* 739 F.Supp. 1173, 1178–79 (N.D.Ill.1990) (*Hickombottom I*), in which it granted the defendants' motion to dismiss the false arrest claim, holding that the facts clearly demonstrated that the defendants' arrest of Hickombottom was "reasonable" as that term is understood in Fourth Amendment jurisprudence. The facts set forth above serve only to further demonstrate the appropriateness of the arrest. The defendants are therefore entitled to summary judgment on that claim. That is the only claim that could reasonably be understood to be against Detectives Murphy, Kierse and O'Connell, since, according to the facts set forth above and admitted by Mr. Hickombottom, they were not involved in the interrogation or processing after Hickombottom's arrest.

McGuire and Tansey, however, are left with Hickombottom's remaining claims. The court will address each in turn. First, Mr. Hickombottom claims that the defendants violated his Fourth Amendment right to a prompt hearing by delaying his appearance before a magistrate. The defendants did question Hickombottom for about eleven hours after his arrest, but had nothing to do with him after that time. Eleven hours is not an unreasonable period in which to delay an appearance before a magistrate. See *County of Riverside v. McLaughlin,* — U.S. —, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) (holding that period of up to forty-eight hours between arrest and initial appearance before judicial officer is presumptively reasonable). Whatev-

---

The court stated then that it will not entertain those claims until after Hickombottom demonstrates that he has exhausted his remedies under 28 U.S.C. § 2254 (1982). Hickombottom has offered no evidence that he has done so, there is no unlawful search claim in his First Amended Complaint, and this court will not consider that claim. As to Hickombottom's excessive force claim, that too appears nowhere in his First Amended Complaint, nor, if it did, would this court need to spend much time considering it, since Hickombottom has offered no facts in connection with defendants' motion for summary judgment which would support such a claim.

er happened afterward is not, or at least has not been shown by the facts before the court to be, attributable to the defendants' conduct. Furthermore, as the court discussed in its earlier decision in this case, Hickombottom has offered no facts supporting his claim that the unlawful detention somehow caused him compensable injury. See *Hickombottom I*, 739 F.Supp. at 1181. The court therefore grants the defendants' motion for summary judgment on that claim.

 Next are Hickombottom's claims that the defendants deprived him of his Fourteenth Amendment right to due process by denying him food and water for an unreasonable length of time while he was in their custody and that they violated his Fifth and Fourteenth Amendment right not to incriminate himself when they coerced his confession. For two reasons, those claims are inappropriate here. First, as the court noted in *Hickombottom I*, claims which are indirect attacks on a plaintiff's confinement, as is the claim that the confession which, at least in part, landed Hickombottom in jail, was coerced, are better pressed in a habeas corpus proceeding pursuant to 28 U.S.C. § 2254 (1982). Hickombottom has not demonstrated to this court that he has exhausted that avenue of attack. Furthermore, to the extent that his claims would be proper in a § 1983 proceeding, they are barred by the Circuit Court's determination that the confession was not coerced. See *Allen v. McCurry*, 449 U.S. 90, 94–105, 101 S.Ct. 411, 414–420, 66 L.Ed.2d 308 (1980), in which the court confirmed the applicability of the common-law doctrine of issue preclusion to § 1983 actions. Thus, the court grants the defendants' motion for summary judgment on each of the claims raised in Count 1 of Hickombottom's first amended complaint. Count 2 is a conspiracy claim, and the defendants are entitled to summary judgment on that claim as well, since if there is no unlawful act, there can have been no unlawful conspiracy. See *Hickombottom I*, 739 F.Supp. at 1181, and cases cited therein.

*Conclusion*

The court grants the defendants' motion for summary judgment on both counts of the First Amended Complaint.